1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHANDAR OUM,                              No.  2:14-cv-2734-CKD

12              Plaintiff,

13        v.                                   ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying applications for Disability Income Benefits ("DIB") and

20   Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

21   ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for

22   summary judgment and grant the Commissioner's cross-motion for summary judgment.

23   I.        BACKGROUND

24        Plaintiff, born September 20, 1971, applied on August 18, 2011 for DIB and SSI, alleging

25   disability beginning October 1, 2009.  Administrative Transcript ("AT") 156-67.  Plaintiff alleged

26   he was unable to work due to diabetes, high blood pressure, and nerve damage.  AT 177.  In a

27   ////

28   ////

                                          1

decision dated April 17, 2013, the ALJ determined that plaintiff was not disabled.[1]  AT 11-21.

The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.   The claimant meets the insured status requirements for the Social Security Act through December 31, 2015.
>
> 2.   The claimant has not engaged in substantial gainful activity since October 1, 2009, the alleged onset date.
>
> 3.   The claimant has the following medically severe combination of impairments:   insulin-dependent diabetes mellitus, diabetic peripheral neuropathy of the extremities, hypertension, bilateral carpal tunnel syndrome, and exogenous overweight status/obesity.
>
> 4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

---

[1]    Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?   If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

1    the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

2    5.  After careful consideration of the entire record, I find that the
      claimant has the residual functional capacity to perform between
3    light and sedentary work as defined in 20 CFR 404.1567(b) and
      416.967(b): the claimant has the ability to lift and/or carry 20
4    pounds occasionally and 10 pounds frequently; the claimant cannot
      perform climbing of ladders, ropes, or scaffolds, the claimant
5    cannot crawl, but can occasionally feel with the bilateral upper
      extremities; and the claimant must avoid concentrated exposure,
6    *i.e.,* intense, continuous, intractable, unremitting exposure, to
      hazard and extremely loud noise.

7
      6.  The claimant is capable of performing past relevant work as a
8    case manager and property manager.  This work does not require
      the performance of work-related activities precluded by the
9    claimant's residual functional capacity.

10    7.  The claimant has not been under a disability, as defined in the
      Social Security Act, from October 1, 2009, through the date of this
11    decision.

12   AT 13-21.

13   II.    ISSUES PRESENTED

14         Plaintiff argues that the ALJ committed the following errors in finding plaintiff not

15   disabled:  (1) improperly discounted the opinion of Dr. Chan, one of plaintiff's treating

16   physicians, without articulating specific and legitimate reasons in support of that determination;

17   and (2) improperly found that plaintiff could perform past relevant work at step four based on a

18   residual functional capacity ("RFC") determination that did not take into account all of plaintiff's

19   impairments.

20   III.   LEGAL STANDARDS

21         The court reviews the Commissioner's decision to determine whether (1) it is based on

22   proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

23   as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

24   evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

25   F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

26   mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

27   Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

28   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

1   ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

2   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

3   rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

4          The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

5   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

6   conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

7   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

8   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

9   administrative findings, or if there is conflicting evidence supporting a finding of either disability

10  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

11  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

12  weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

13  IV.    ANALYSIS

14         A.  The ALJ Articulated Proper Reasons for Discounting Dr. Chan's Opinion

15         First, plaintiff argues that the ALJ erred by discounting the opinion of Dr. Chan, one of

16  plaintiff's treating physicians, without providing specific and legitimate reasons for doing so.

17         The weight given to medical opinions depends in part on whether they are proffered by

18  treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

19  1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a

20  greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80

21  F.3d 1273, 1285 (9th Cir. 1996).

22         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

23  considering its source, the court considers whether (1) contradictory opinions are in the record,

24  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

25  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

26  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

27  rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at

28  830.  While a treating professional's opinion generally is accorded superior weight, if it is

4

1   contradicted by a supported examining professional's opinion (e.g., supported by different

2   independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

3   1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

4   any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

5   findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

6   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

7   non-examining professional, without other evidence, is insufficient to reject the opinion of a

8   treating or examining professional.  Lester, 81 F.3d at 831.

9           Here, the record contains treating records from Dr. Chan from between July 2011 and July

10  2012.  On July 3, 2012, Dr. Chan completed a one-page "physical capacities evaluation" for

11  plaintiff.  AT 417.  Therein, she diagnosed plaintiff with severe diabetic polyneuropathy and

12  bilateral moderate-to-severe carpal tunnel syndrome.  Id.  Based on these diagnoses and her

13  clinical evaluations of plaintiff, Dr. Chan opined that plaintiff could sit for up to two hours at a

14  time and stand and walk for up to one hour at a time.  Id.  She further opined that plaintiff could

15  stand, sit, and walk for up to one hour total in an eight-hour workday.  Id.  She also opined that

16  plaintiff could occasionally lift up to 20 pounds and carry up to 10 pounds.  Id.  Furthermore, she

17  determined that plaintiff could not engage in any repetitive grasping, fine manipulation, or

18  pushing and pulling of controls with his hands, and could not use his feet for repetitive

19  movements such as using leg controls.  Id.  Dr. Chan also found that plaintiff was limited to

20  occasional bending, squatting, crawling, and reaching, and could not engage in any climbing.  Id.

21  Finally, she opined that plaintiff had a mild restriction from activities involving exposure to

22  marked changes to temperature and humidity.  Id.

23          The ALJ gave the following rationale in support of his decision to discount Dr. Chan's

24  treating opinion:

25      I discount Dr. Chan's opinion because her own notes do not comport with the
        medical source statement.  For instance, the claimant testified that over the course
26      of an eight-hour day he could stand 1.5 hours, which is greater than Dr. Chan's
        assessment.  Moreover, Dr. Chan's assessment regarding sitting is internally
27      inconsistent.  Dr. Chan stated that the claimant could sit for two hours at a time but

28

could sit only one hour total during an eight-hour workday.  The relatively mild symptoms at the July 2011 neurology consult and objective evidence such as 5/5 motor strength throughout except 4/5 strength in the toe extensors and normal gait with good arm swing are not consistent with the extremely restrictive assessment Dr. Chan gave.  Dr. Chan's opinion is also not consistent with the consultative examiner's notation that the claimant walked into the examination room without assistance or difficulty, was able to transfer from a chair to the examination table, and sat comfortably.  Dr. Chan opined that the claimant could not drive an automobile.  However, the claimant stated that he rarely drove.  Thus, the claimant's statements show that the claimant is in fact more capable than Dr. Chan opined.  For the above reasons, Dr. Chan's opinion is not fully persuasive.

AT 19 (citations to the record omitted).  Contrary to plaintiff's assertion, this rationale contained multiple specific and legitimate reasons for discounting Dr. Chan's opinion that were supported by substantial evidence in the record.[2]

First, the ALJ determined that Dr. Chan's own objective medical findings in her treatment notes indicated that plaintiff's physical impairments imposed functional limitations less extreme than those Dr. Chan opined.  Indeed, as the ALJ noted, Dr. Chan's treating records show that plaintiff had a normal gait with good arm swing and full 5/5 motor strength in all of his extremities, with the exception of 4/5 strength in his toe extensors, throughout the course of his time under Dr. Chan's treatment.  AT 19, 351, 355, 388, 421, 424.  Dr. Chan also noted during each examination that plaintiff experienced reduced light touch, pin prick, and temperature sensitivities up to the mid shin on his legs and up to the mid forearm in his arms, but generally classified these sensory impairments as "mild."  AT 351, 368, 388, 421, 424.  Dr. Chan further found that plaintiff had a "mild unsteady" Romberg's sign, but normal coordination testing.  Id. While Dr. Chan noted on July 2, 2012 that an electrodiagnostic study provided evidence "consistent with . . . right moderate to severe and left moderate carpal tunnel syndrome," she also noted that plaintiff's "hand therapy helped some" and that plaintiff "has been stable without new focal or neurological complains [sic] or symptoms."  AT 423.  In short, the ALJ's determination that Dr. Chan's own treatment records did not support her opinion that plaintiff had extreme

---

[2] Because Dr. Chan's opinion was contradicted by the opinions of plaintiff's other physicians, particularly, the opinion of examining physician Dr. Schwartz, the ALJ was required to provide "specific and legitimate" reasons in support of his decision to discount Dr. Chan's opinion. Lester, 81 F.3d at 830.

1    limitations in his ability to perform tasks such as standing, walking, sitting, grasping, and using

2    foot and hand controls was a specific and legitimate reason for discounting Dr. Chan's opinion

3    that was supported by substantial evidence from the record.  Tommasetti, 533 F.3d at 1041

4    (holding that incongruities between a treating physician's objective medical findings and that

5    physician's opinion constitutes a specific and legitimate reason for an ALJ to reject that

6    physician's opinion); see also Rollins, 261 F.3d at 856 (holding that the ALJ properly discounted

7    a treating physician's functional recommendations that "were so extreme as to be implausible and

8    were not supported by any findings made by any doctor," including the treating physician's own

9    findings).

10         Furthermore, the ALJ highlighted the fact that Dr. Chan provided incongruous opinions

11   that plaintiff could sit for two hours at a time, but could only sit for a total of one hour over the

12   course of an eight-hour workday in support of his decision to assign Dr. Chan's opinion lesser

13   weight.  Plaintiff suggests that this inconsistency was likely an oversight on Dr. Chan's part and

14   argues that this apparent discrepancy required the ALJ to re-contact Dr. Chan to obtain

15   clarification of the basis for these opinions.  However, the record before the ALJ already

16   contained all of Dr. Chan's treating notes from throughout the relevant period that provided the

17   underlying basis for Dr. Chan's opinion.  Moreover, the ALJ properly considered this

18   contradiction in Dr. Chan's opinion and reasonably determined that it supported his determination

19   that Dr. Chan's opinion was entitled to reduced weight.  See Andrews, 53 F.3d at 1039-40 ("The

20   ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for

21   resolving ambiguities.").

22         The ALJ also determined that Dr. Chan's opinion was entitled to only reduced weight

23   because its functional findings conflicted with the clinical findings of Dr. Schwartz, an examining

24   physician.  Specifically, the ALJ cited to Dr. Schwartz's statements that plaintiff was able to walk

25   into the examination room without assistance or difficulty, transfer from a chair to the

26   examination table, and sit comfortably throughout the course of the examination.  AT 19 (citing

27   AT 372-76).  Furthermore, Dr. Schwartz opined, on the basis of his own independent clinical

28   findings, that plaintiff's impairments caused him physical limitations far less severe than those

7

1    opined by Dr. Chan.  AT 376.  Specifically, Dr. Schwartz opined that plaintiff's limitations

2    permitted him to sit and stand for a maximum of four hours in an eight-hour workday, and

3    imposed no limitations on his ability to sit and ambulate without assistance.  Id.  He also opined

4    that the impairments to plaintiff's upper and lower extremities limited him to activities involving

5    occasional feeling and from working at heights.  Id.  Given the substantial medical evidence in

6    the record indicating that plaintiff suffered from generally mild arm and leg impairments that

7    were stable throughout the relevant period, e.g., AT 351, 355, 366, 388, 421, the ALJ's reliance

8    on the more moderate clinical findings of Dr. Schwartz in support of discounting Dr. Chan's

9    opinion was proper.  See Andrews, 53 F.3d at 1041.

10          The ALJ also found Dr. Chan's opinion that plaintiff could not drive an automobile to be

11    more restrictive than, and at odds with, plaintiff's own statement that he rarely drove.[3]  Plaintiff

12    argues that Dr. Chan never opined that plaintiff could not drive an automobile, therefore

13    rendering this reason for discounting Dr. Chan's opinion improper.  However, Dr. Chan did opine

14    that plaintiff could not engage in activities that required repetitive foot movements such as using

15    foot-based controls.  AT 417.  From this determination, the ALJ could reasonably infer that the

16    limitations opined by Dr. Chan would completely restrict plaintiff from operating an automobile.

17    See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[W]e must uphold the ALJ's

18    findings if they are supported by inferences reasonably drawn from the record.").  Furthermore,

19    the ALJ also found that plaintiff's statement that he could stand for "probably [an] hour and a

20    half" total over the course of an eight-hour workday, AT 50, indicated that plaintiff himself

21    believed he had a standing limitation less severe than that opined by Dr. Chan.  Plaintiff argues

22    that plaintiff's self-assessment was largely consistent with Dr. Chan's opinion that plaintiff could

23    stand for only one hour total over the course of a standard workday because plaintiff also

24    _____

25    [3] During the administrative hearing plaintiff testified that he could not drive due to his physical
     impairments, but earlier wrote in his adult function report that he rarely drove.  AT 46, 206.
26    Plaintiff also stated that he "rarely drives" to Dr. Schwartz during his consultative examination on
     January 6, 2012.  AT 373.  The ALJ noted this discrepancy between plaintiff's prior statements
27    and his hearing testimony and found plaintiff's hearing testimony not credible.  AT 19.  Plaintiff
     does not challenge the ALJ's adverse credibility determination.  Accordingly, the court defers to
28    the ALJ's credibility conclusions.

1    estimated that he could only stand for 10 to 15 minutes at a time and qualified his statement

2    regarding the total amount of time he could stand with the word "probably."  However, this

3    argument does not negate the fact that the ALJ's resolution of the apparent conflict between

4    plaintiff's subjective complaints and Dr. Chan's opinion was reasonable. See Molina, 674 F.3d at

5    1111.

6         For the reasons discussed above, the ALJ provided multiple specific and legitimate

7    reasons for discounting Dr. Chan's opinion that were all supported by substantial evidence from

8    the record.  Accordingly, the ALJ did not err in finding that Dr. Chan's opinion was entitled to

9    reduced weight when determining plaintiff's residual functional capacity.

10        B.  The ALJ Made a Proper Step Four Determination

11        Next, plaintiff argues that the ALJ erred at step four by not including the limitations

12   opined by Dr. Chan in his RFC determination on which his step four determination that plaintiff

13   could perform past relevant work was based.  However, for the reasons stated above, the ALJ

14   properly discounted Dr. Chan's opinion and substantial evidence supported the ALJ's finding that

15   the extreme limitations opined by Dr. Chan were not supported by the rest of the record.  The

16   ALJ was not required to adopt the limitations opined by Dr. Chan.  Moreover, the limitations

17   contained in the ALJ's RFC determination were supported by substantial evidence from the

18   record.  Indeed, the limitations included in the ALJ's RFC determination largely tracked the

19   physical limitations found in Dr. Schwartz's opinion limiting plaintiff to light work, which, as

20   discussed above, was generally supported by the record, except the ALJ found plaintiff to be

21   somewhat more limited in his lifting and carrying abilities based on the evidence developed after

22   Dr. Schwartz's opinion.  AT 18.

23        The ALJ based his step four determination that plaintiff could perform his past relevant

24   work as a case manager and property manager on his well-reasoned RFC conclusion.  Given the

25   limitations contained in the RFC determination, the ALJ was correct to determine that plaintiff

26   was capable of performing his past work as a case manager and property manager as those jobs

27   ////

28   ////

9

1    are defined in the Dictionary of Occupational Titles ("DOT").[4]  See DOT 195.107-010, 1991 WL

2    671569 (caseworker); DOT 186.167-018, 1991 WL 671326 (property manager).  Accordingly,

3    the ALJ did not err in determining that plaintiff could perform past relevant work at step four,

4    therefore making him not disabled within the meaning of the Social Security Act.[5]

5    V.    CONCLUSION

6            For the reasons stated herein, IT IS HEREBY ORDERED that:

7            1.  Plaintiff's motion for summary judgment (ECF No. 16) is denied;

8            2.  The Commissioner's cross-motion for summary judgment (ECF No. 18) is granted;

9    and

10           3.  Judgment is entered for the Commissioner.

11   Dated:  November 9, 2015

12                                                        _____
                                                         CAROLYN K. DELANEY
13                                                        UNITED STATES MAGISTRATE JUDGE

14   11 oum2734.ss

15

16

17

---

18   [4] The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational
     Titles (4th ed. 1991), is routinely relied on by the SSA "in determining the skill level of a
19   claimant's past work, and in evaluating whether the claimant is able to perform other work in the
     national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies
20   jobs by their exertional and skill requirements.  The DOT is a primary source of reliable job
     information for the Commissioner. 20 C.F.R. § 404.1566(d)(1).
21

22   [5] While the ALJ could have concluded that plaintiff was not disabled within the meaning of the
     Social Security Act at step four after determining that plaintiff was capable of performing past
23   relevant work, he continued to step five of the sequential analysis and determined that there were
     other jobs existing in the national economy that plaintiff could perform given his RFC.  AT 20-
24   21.  Plaintiff argues that the ALJ erred in this determination because he based it solely on the
     Medical Vocational Guidelines even though they did not accurately and completely describe
25   plaintiff's limitations, thus requiring the testimony of a vocational expert.  While plaintiff's
     argument is mooted by the fact that the ALJ properly found plaintiff not disabled at step four, the
26   court notes that plaintiff provides no explanation as to how the ALJ's RFC determination
     contained the sort of non-exertional limitations that would require the ALJ to consult with a
27   vocational expert at step five.  See Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007).

28